JUAN ALVIRA CINTRÓN, querellante y recurrido, *v.* SK & F LABORATORIES CO. y OTROS, querellados y recurrentes.

*Número:* RE-90-682          *Resuelto:* 4 de abril de 1997

*Aníbal Irizarry* y *María Santiago de Vidal*, de *McConnell Valdés, Kelley Sifre, Griggs & Ruiz Suria*, abogados de la parte recurrente; *Luis Ángel López Olmedo*, abogado de la parte recurrida.

El Juez Presidente Señor Andréu García emitió la opinión del Tribunal.

El recurso de autos plantea si la *indemnización* por despido sin justa causa, al amparo del Art. 1 de la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185a) está sujeta al descuento en concepto del seguro social federal. Resolvemos en la negativa. Reiteramos, además, nuestros pronunciamientos de *Vélez Rodríguez v. Pueblo Int'l, Inc.*, 135 D.P.R. 500 (1994), y *Torres v. Star Kist Caribe, Inc.*, 134 D.P.R. 1024 (1994), en cuanto a que el término para ejercitar la causa de acción según el Art. 5a de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935 (11 L.P.R.A. sec. 7), es de caducidad y no está sujeto a ser interrumpido por una apelación que sea instada por el empleado ante la Comisión Industrial.

I

El 11 de octubre de 1988, el recurrido Juan Alvira Cintrón presentó una querella ante el Tribunal Superior, Sala de Carolina, donde solicitó que se le ordenara a su patrono, SK & F Laboratories Co. (en adelante SK & F), que lo reinstalara en su empleo toda vez que había cesado cierta incapacidad emocional alegadamente relacionada con su trabajo. Reclamó, además, los salarios dejados de percibir

conforme al procedimiento dispuesto por la Ley Núm. 2 de 17 de octubre de 1961 (32 L.P.R.A. sec. 3118 *et seq.*).[1]

Se alegó en la querella que el señor Alvira Cintrón trabajó para su patrono por alrededor de diez (10) años y que en septiembre de 1986 compareció al Fondo del Seguro del Estado (en adelante el Fondo) para tratamiento médico por una condición emocional. Alegó haber sido dado de alta en febrero de 1987, sin compensación ni relación alguna.[2] Alegó, además, haberse reportado a trabajar al día siguiente, pero que volvió a recibir ayuda médica en una institución privada durante el período comprendido entre el 1ro y el 15 de mayo de 1987. Finalmente, indicó que durante los meses de junio y julio de 1987 recibió tratamiento médico privado y compareció de forma voluntaria al Fondo en donde, con fecha de 21 de octubre de 1987, se le ordenó regresar a su trabajo con derecho a tratamiento.[3]

Surge de la querella que el 21 de marzo de 1988 el Fondo resolvió, con relación al segundo caso, que el obrero no había sufrido accidente de trabajo ni padecía de enfermedad ocupacional alguna. Inconforme, el señor Alvira Cintrón apeló ambas decisiones del Fondo (marzo de 1987 y marzo de 1988) ante la Comisión Industrial. A la fecha de dictarse la sentencia recurrida, esos recursos se encontraban pendientes.

El señor Alvira Cintrón alegó que a pesar de que estaba capacitado para trabajar desde el 21 de octubre de 1987 y

---

[1] Este pleito fue consolidado con otro presentado por el Secretario del Trabajo, quién representaba al recurrido ante el Tribunal de Distrito, Sala de Carolina, donde se reclamaron de igual forma la reinstalación y los salarios impagados o, en la alternativa, la compensación adecuada a tenor de lo dispuesto en la Ley Núm. 45 de 18 de abril de 1935 (11 L.P.R.A. sec. 1 *et seq.*) y/o Ley Núm. 80 de 30 de mayo de 1986 (29 L.P.R.A. sec. 185a *et seq.*).

[2] Caso Núm. 87-15-1005. El 20 de marzo de 1987 el Fondo del Seguro del Estado (en adelante el Fondo) determinó que la condición presentada por el recurrido no estaba relacionada con el empleo y ordenó el cierre y archivo del caso.

[3] Caso Núm. 87-15-5685. En este caso no se rindió un informe patronal, ya que el patrono señaló que las alegaciones que se hacían eran las mismas que las del Caso Núm. 87-15-1005; por ello el obrero compareció ante el Fondo mediante una declaración voluntaria.

que a partir de tal fecha le hizo infructuosamente varias peticiones a su patrono para que lo reinstalara en su empleo, éste se negó a ello; quien lo despidió formalmente el 27 de junio de 1988, por considerar que no estaba capacitado para continuar en el empleo.

El 21 de diciembre de 1989 el patrono, SK & F, presentó una moción para solicitar que se dictara sentencia sumaria a su favor. Alegó en dicha moción que no tenía obligación alguna de reservarle el empleo al querellante ni de reinstalarlo según la Ley del Sistema de Compensaciones por Accidentes del Trabajo, por no tratarse de un accidente o una enfermedad ocupacional. Alegó en la alternativa que, aun asumiendo que se tratara de un accidente o de una enfermedad ocupacional, el querellante no solicitó su reinstalación en el empleo dentro del año siguiente a la fecha del accidente y que el demandante no estaba física y mentalmente capacitado para ocupar su empleo. El querellante presentó un escrito en oposición a la moción del querellado. Surge de la sentencia recurrida que el 11 de abril de 1990, el tribunal dictó una resolución mediante la cual denegó la desestimación solicitada.

El 16 de mayo de 1990, SK & F presentó una moción sobre consignación y solicitud de sentencia. En ella solicitó la desestimación del caso en su totalidad y, a su vez, consignó el importe de la mesada, el cual entendía que le correspondía al querellante según la Ley Núm. 80, *supra.* El querellante se opuso a dicha moción y expuso la existencia de errores en el cómputo de la mesada por haberse descontado de ésta una cantidad en concepto de seguro social federal y alegó error en la suma de honorarios de abogado.

El 1ro de noviembre de 1990 el tribunal de instancia dictó una sentencia parcial en la que denegó la moción de desestimación presentada por SK & F y resolvió que no procedía el descuento de seguro social de la suma consignada en concepto de la mesada. Resolvió, además, que por encontrarse pendientes ante la Comisión Industrial las decisiones del Fondo sobre la relación causal de la condición

del querellante, no podía atender la controversia sobre la reinstalación del querellante al amparo de la Ley Núm. 45, *supra.*

Inconforme, SK & F acudió ante nos y señaló los errores siguientes:

> A. ... resolver que no procede al presente la desestimación de la acción instada por el querellante-recurrido al amparo de la Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. [s]ec. 1 y sigs. [sic.] por haber éste apelado ante la Comisión Industrial las determinaciones finales de no relación causal emitidas por el Fondo del Seguro del Estado en los casos número 87-15-995 y 87-15-5685.
> B. ... no desestimar la acción instada por el querellante-recurrido al amparo de la Ley 45, a pesar de que transcurrió en exceso de doce meses entre el alegado accidente del trabajo y el momento en que el demandante solicitó reinstalación en su empleo, a tenor con las disposiciones del Artículo 5(a) de la Ley 45, 11 L.P.R.A. [s]ec. 7.
> C. ... resolver que la mesada provista al amparo de la Ley Núm. 80 del 30 de mayo de 1976, 29 L.P.R.A. [s]ec. 185, no conlleva deducción alguna por concepto de Seguro Social. Solicitud de revisión, págs. 5–6.

Mediante Resolución de 28 de diciembre de 1990 expedimos el recurso. Cumplidos todos los trámites de rigor, resolvemos.

## II

Atendemos en primer lugar el planteamiento sobre si la indemnización por despido injustificado está sujeta al descuento por seguro social federal.

El Art. 10 de la Ley Núm. 80 (29 L.P.R.A. sec. 185J), dispone que "[n]o se hará descuento alguno de nómina sobre la *indemnización* dispuesta por las secs. 185a a 185l de este título, debiendo el patrono entregar íntegramente

el monto total de la misma al empleado".(⁴) (Énfasis suplido.)

La sabiduría de dicha disposición está enmarcada dentro del propósito *reparador* que inspiró la aprobación de la Ley Núm. 80, *supra*:

> Ya es tiempo que se proteja de una forma más efectiva el derecho del obrero puertorriqueño a la tenencia de un empleo mediante la aprobación de una ley que a la vez que otorgue unos remedios más justicieros y consubstanciales con los *daños* causados por un despido injustificado desaliente la incidencia de este tipo de despido. (Énfasis suplido.) Exposición de Motivos de la Ley Núm. 80, *supra*, 1976 Leyes de Puerto Rico 268.

Por su parte, el Art. 1 de la Ley Núm. 80, *supra*, dispone, en lo pertinente, lo siguiente:

> Todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo, designado en lo sucesivo como el establecimiento, donde trabaje mediante remuneración de alguna clase contratado sin tiempo determinado, que fuere despedido de su cargo sin que haya mediado una justa causa, tendrá derecho a recibir de su patrono en adición al sueldo que hubiere devengado:
> (a) el sueldo correspondiente a un mes *por concepto de indemnización*;
> (b) una *indemnización progresiva adicional* equivalente a una semana por cada año de servicio. (Énfasis suplido.) 29 L.P.R.A. sec. 185a.

En la citada disposición de la Ley Núm. 80, *supra*, clara e inequívocamente se indica que la compensación a la que tiene derecho todo empleado despedido injustificadamente constituye una *"indemnización"* para resarcir los

---

(⁴) La Ley Núm. 16 de 21 de mayo de 1982 (29 L.P.R.A. secs. 180–182, 185h–185l, 192) añadió este artículo a la Ley Núm. 80, *supra*. El P. del C. 320 tenía igual contenido que el P. del S. 438 que se convirtió en la Ley Núm. 16, *supra*. Surge del Informe de la Comisión de Trabajo y Asuntos del Veterano de la Cámara de Representantes sobre el P. de la C. 320 de 21 de abril de 1982, 9na Asamblea Legislativa, 2da Sesión Ordinaria, que "[e]sta compensación no se considerará salario. ... El permitir descuento de esta nómina derrotaría la intención de la ley, que su fin último es uno reparador". Véase: *Martínez Campos v. Banco de Ponce*, 138 D.P.R. 366 (1995), opinión disidente de la Juez Asociada Señora Naveira de Rodón.

*daños* sufridos a consecuencia del despido.[5] Esta indemnización no equivale a una remuneración o salarios por los servicios prestados ni constituye un sustituto del sueldo. "La suma a que tiene derecho un empleado que ha sido despedido injustificadamente de su empleo al amparo de la Ley Núm. 80, *supra*, constituye una indemnización, lo que legalmente se define como un resarcimiento de daños y/o perjuicios, razón por la cual la misma no constituye salarios." A. Acevedo Colóm. *Legislación protectora del trabajo comentada*, Hato Rey, Imp. Ramallo Bros., 1990, pág. 140. Este tipo de protección brindada a los empleados y obreros de nuestro país ha sido caracterizado como único. Así Lex K. Larson comenta lo siguiente:

> Puerto Rico is unique in having legislation providing compensation for any employee under an indefinite term contract who is discharged without good cause. 2 *Larson Unjust Dismissal* Sec. 10.40 [1][a] (1996).
> Puerto Rico has enacted what amounts to a mandatory severance pay statute. This law provides indemnity to employees under indefinite term contracts who are discharged without good cause. The indemnification consists of one month's salary and one week's salary for each year worked prior to discharge. Employees are further entitled to back pay due them, and any amounts already earned in commissions and pay for vacation time not taken due to work demands. (Escolios omitidos.) Larson, *supra*, Vol. 1, Sec. 9A.04(1) (1997).

Compatible con lo antes explicado, el Departamento del Trabajo y Recursos Humanos ha interpretado que "[l]a compensación que se satisface al trabajador despedido no puede considerarse como salario. Los salarios constituyen una compensación por servicios prestados mientras que la suma pagada al trabajador despedido tiene la naturaleza de una indemnización por disposición específica del Artí-

---

[5] La acción de "indemnizar" es definida por Ignacio Rivera García en su *Diccionario de Términos Jurídicos*, Orford, Ed. Equity, 1976, pág. 128, como el "*resarcir un daño o perjuicio*". Por su parte, Guillermo Cabanellas en su *Diccionario Enciclopédico de Derecho Usual*, 20va ed. rev., Buenos Aires, 1986, T. IV, pág. 381, define el concepto "indemnización" como el "resarcimiento económico del daño o perjuicio causado desde el punto de vista del culpable".

culo 1 de la Ley Núm. 80". Guías para la Interpretación y Aplicación de la Ley Núm. 80, aprobada el 30 de mayo de 1976, Departamento del Trabajo y Recursos Humanos, enero 1979, pág. 55. Véase, además, *Srio. del Trabajo v. I.T.T.*, 108 D.P.R. 536 (1979).

■ Esta interpretación armoniza con lo dispuesto en la propia ley, a los efectos de que la suma otorgada como "indemnización" por el despido es una "en adición al *sueldo* que hubiere devengado" el empleado.[6] Mediante la aprobación de la Ley Núm. 80, *supra*, la Asamblea Legislativa dejó claramente establecida la diferencia entre el *sueldo* o *salario* por los servicios prestados y la *indemnización* por los daños que produzca el despido. "Cuando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu." Art. 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14. Véanse, además: *Silva v. Adm. Sistemas de Retiro*, 128 D.P.R. 256 (1991); *Rodríguez v. Fidelity Bond Mortg. Corp.*, 108 D.P.R. 156 (1978), y *Rodríguez Rodríguez v. Gobernador*, 91 D.P.R. 101 (1964), entre otros.

■ Por otro lado, el concepto "salarios" (*wages*) en la Ley Federal del Seguro Social, 42 U.S.C. sec. 409(a), se define como una *remuneración* en concepto del empleo, que no esté expresamente excluida por el estatuto.[7]

■ Para efectos de la Ley Federal del Seguro Social, todo pago que reciba un obrero o empleado, que no constituya remuneración por servicios prestados, queda expresamente excluido del concepto "salario", por lo que no está sujeto a dicho descuento.[8] Interpretando la referida ley

---

[6] Art. 1 de la Ley Núm. 80, *supra*, 29 L.P.R.A. sec. 185a.

[7] En lo pertinente, en la Ley Federal del Seguro Social, 42 U.S.C. sec. 409(a), se indica lo siguiente: " 'wages' means remuneration ... and remuneration paid after 1950 for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash ...."

[8] Cabe señalarse que en el análisis de lo que queda excluido del concepto "salario", para fines del seguro social, no es relevante el hecho de que una suma o

federal, en H.L. McCormick, *Social Security Claims and Procedures*, 4ta ed., Minnesota, Ed. West Publishing Co., 1991, Vol. 1, Sec. 263, pág. 197, se explica lo siguiente:

> *Payments that are not intended as remuneration for employment do not count as wages for Social Security purposes. This includes "damages"*, attorney's fees, interest, or penalties paid under court judgment or by compromise settlement with the employer based on a wage claim. [*Social Security Handbook*, 10th Ed., (1988), Sec. 1337]. (Énfasis suplido.)

Debemos aclarar que para efectos del descuento del seguro social, la paga atrasada, sin embargo, se considera como "salario". Véase *Social Security Board v. Nierotko*, 327 U.S. 358 (1946), citado más recientemente en *United States v. Burke*, 504 U.S. 229 (1992).(⁹)

■     A tenor de lo antes expuesto, resolvemos que la "indemnización" provista por la Ley Núm. 80, *supra,* para resarcir *los daños* que provoca el despido injustificado no está sujeta a descuento de nómina alguno, incluyendo el del seguro social federal. Cualquier interpretación contra-

---

partida determinada sea excluida para fines de la contribución sobre ingresos federales. Ello es así, toda vez que en la propia Ley Federal del Seguro Social se advierte claramente lo siguiente: "Nothing in the regulations prescribed for purposes of chapter 24 of Title 26 (relating to income tax witholding) which provides an exclusion from 'wages' as used in such chapter shall be construed to require a similar exclusion from 'wages' in the regulations prescribed for purposes of this subchapter". 42 U.S.C. sec. 409(b).

(⁹) En *Social Security Board v. Nierotko*, 327 U.S. 358 (1946), se resolvió que la paga atrasada constituía un salario para propósitos de elegibilidad de beneficios del seguro social federal. Por su parte, en *United States v. Burke*, 504 U.S. 229 (1992), el Tribunal Supremo federal resolvió que, para efectos de la sección 104(a)(2) del Código de Rentas Internas federal (*Internal Revenue Code*) la paga atrasada concedida bajo el Título VII de la Ley Federal de Derechos Civiles de 1964 no constituye una exención de los ingresos brutos. Más recientemente, en *Commissioner v. Schleier*, 515 U.S. 323 (1995), se resolvió que el remedio de paga atrasada y daños líquidos concedidos bajo el *Age Discrimination in Employment Act* (ADEA), 29 U.S.C. sec. 621 *et seq.*, no constituyen una exención de los ingresos brutos bajo el Código de Rentas Internas federal, 26 U.S.C. sec. 104(a)(2). Allí se reiteró que la intención del Congreso era que los daños líquidos bajo el ADEA fuesen de naturaleza punitiva (citando a *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985). A pesar de que los casos antes citados no aplican a la controversia que hoy resolvemos, resulta importante señalarlos toda vez que, de concederse paga atrasada, según reclamada en el caso de autos, dicha partida está sujeta al descuento del seguro social por la propia definición de "salarios" contenida en dicha ley.

ria desvirtúa el fin loable que persigue la ley. Por ello, no erró el tribunal al resolver este asunto.

## III

Evaluemos los planteamientos en cuanto a si procede o no la desestimación de la reclamación según el Art. 5a de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, *supra.*([10])

En *Torres v. Star Kist Caribe, Inc.*, supra, explicamos que el período o término de doce (12) meses que establece el citado artículo 5A, de reserva de empleo, *es de caducidad y no puede interrumpirse de forma alguna.* La solicitud de reinstalación tiene que hacerse dentro de los doce (12) meses a partir de la fecha cuando ocurrió el accidente o la enfermedad laboral. "Luego de transcurrido este término, el patrono puede despedir al empleado, si éste aún no ha sido dado de alta del F.S.E. La legislatura estimó razonable dicho período para proteger el derecho del trabajador a retener su empleo, estableciendo así un balance entre los derechos del patrono y los del empleado lesionado. Ésta no tuvo la intención de establecer una obligación al patrono de reservar el empleo del obrero

---

([10]) El Art. 5a de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 7, dispone, en lo pertinente, lo siguiente:

"En los casos de inhabilitación para el trabajo de acuerdo con las disposiciones de este Capítulo, el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero o empleado al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:

"(1) que el obrero o empleado requiera al patrono para que lo reponga en su empleo dentro del término de quince días, contados a partir de la fecha en que el obrero o empleado fuere dado de alta, y siempre y cuando que dicho requerimiento no se haga después de transcurridos doce meses desde la fecha del accidente;

"(2) que el obrero o empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición, y

"(3) que dicho empleo subsista en el momento en que el obrero o empleado solicite su reposición. (Se entenderá que el empleo subsiste cuando el mismo está vacante o lo ocupe otro obrero o empleado. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro obrero o empleado dentro de los treinta días siguientes a la fecha en que se hizo el requerimiento de reposición.)"

indefinidamente". *Torres v. Star Kist Caribe, Inc.*, supra, pág. 1033. Véase, además, *Vélez Rodríguez v. Pueblo Int'l, Inc.*, supra, en el que reiteramos la obligación del patrono bajo el Art. 5A, *supra*, de reservar el empleo durante un período de doce (12) meses, desde la ocurrencia del accidente o la enfermedad.

Al tratarse de un término de caducidad, dicho período de reserva no está sujeto a ser interrumpido por la apelación instada por el empleado ante la Comisión Industrial. La decisión que finalmente tome el Fondo o la Comisión sobre si ha ocurrido un "accidente del trabajo" es únicamente a los fines de determinar si el empleado es acreedor a los otros beneficios que provee el *Art. 3* de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 3. *Esta determinación en nada afecta ni condiciona la reclamación que pueda tener el empleado al amparo del Art. 5(A) de dicha ley*, supra, toda vez que al transcurrir el periodo de doce (12) meses, cesa la obligación del patrono de reservar el empleo. El citado Art. 5a no exige que la enfermedad o el accidente sea de naturaleza ocupacional para que el obrero o empleado obtenga el tratamiento médico que provee el estatuto. Para que el obrero sea admitido a tratamiento, no es necesaria una determinación previa del Fondo al efecto de que se trata de un accidente del trabajo o de una enfermedad ocupacional. El referido artículo lo que requiere es que la enfermedad que sufra el empleado lo *inhabilite* para trabajar y que concurran las demás condiciones ya expresadas. Véanse: Op. Secretario del Trabajo y Recursos Humanos Núm. 90-5 de 9 de julio de 1990, pág. 4[11], y *Santiago v. Kodak Caribbean, Ltd.*, 129 D.P.R. 763 (1992).

---

[11] En dicha opinión, el Secretario del Trabajo y Recursos Humanos señaló lo siguiente:

"...la ley no requiere que el Fondo previamente determine que se trata de un accidente o enfermedad ocupacional para entonces ofrecer los servicios solicitados. La realidad es que la determinación de que se trata de un accidente o enfermedad ocupacional, con gran frecuencia se hace mucho tiempo después de haberse ofrecido los servicios al accidentado... la protección del Artículo 5(A) de la ley tiene vigencia

En atención a lo antes discutido, concluimos que erró el tribunal al resolver que no podía atender la reclamación sobre la reserva de empleo por no haber una decisión final y firme sobre la relación causal de la enfermedad o condición del empleado.

Por los fundamentos antes discutidos, *se confirma la sentencia parcial recurrida, en cuanto dispuso de la controversia sobre la deducción del seguro social federal de la indemnización en concepto de mesada al amparo de la Ley Núm. 80, supra. Se revoca, a su vez, la determinación del tribunal de instancia al efecto de que no podía atender la reclamación sobre la reserva de empleo y se devuelve este asunto a dicho tribunal para la continuación de los procedimientos de forma compatible con esta opinión.*

El Juez Asociado Señor Corrada Del Río emitió una opinión concurrente. El Juez Asociado Señor Rebollo López disintió sin opinión escrita.

— O —

Opinión concurrente del Juez Asociado Señor Corrada Del Río.

Estamos conformes con la opinión mayoritaria. Entendemos que ella dirime correctamente la primera controversia, al resolver que la indemnización por despido sin justa causa provista por el Art. 1 de la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185a), no está sujeta al descuento en concepto del seguro social. Sin embargo, entendemos que la opinión mayoritaria debería expresarse más a fondo sobre la segunda controversia planteada que dispone sobre si el Art. 5a de la Ley Núm. 45 de 18 de abril de 1935 (11 L.P.R.A. sec. 7), conocida como la Ley del Sistema de Compensaciones por Accidentes del Trabajo,

---

desde que el empleado inhabilitado para trabajar solicita la protección del Fondo y recibe el tratamiento médico que corresponde, aún cuando después se determine que no se trataba de un accidente o enfermedad ocupacional." Concurrimos plenamente con la Opinión del Secretario.

aplica al caso de autos. El Tribunal expresa que la interrogante sobre la aplicación de esa ley al caso de autos es académica, pero somos del criterio que se debe disponer de esta cuestión. Entendemos que debemos decretar la inaplicabilidad de esa ley a los hechos del caso de autos, ya que la Ley Núm. 139 de 26 de junio de 1968 (11 L.P.R.A. sec. 201 *et seq.*), conocida como la Ley de Beneficios por Incapacidad Temporal, controla situaciones de esta naturaleza.

Los hechos pertinentes a esta controversia son los siguientes. En septiembre de 1986 el obrero recurrido, señor Alvira Cintrón, compareció ante el Fondo del Seguro del Estado (en adelante el Fondo) para recibir tratamientomédico por una condición emocional. Alegadamente fue dado de alta en febrero de 1987, sin compensación ni relación alguna, reportándose al día siguiente a trabajar. El 20 de marzo de 1987 el Fondo determinó que la condición del obrero no estaba relacionada a su empleo, por lo que ordenó el cierre y archivo del caso.

Así las cosas, durante el período comprendido entre el 1ro y 15 de mayo de 1987, volvió a recibir ayuda médica, pero esta vez en una institución privada. Asimismo, durante junio y julio volvió a recibir tratamiento médico privado y compareció ante el Fondo mediante una declaración voluntaria, donde el 21 de octubre de 1987 se le ordenó regresar a su trabajo con derecho a tratamiento. El 21 de marzo de 1988 el Fondo resolvió que el obrero no había sufrido accidente de trabajo ni padecía de enfermedad ocupacional alguna. No conforme con las determinaciones del Fondo, respecto a que su enfermedad no era ocupacional, el obrero acudió ante la Comisión Industrial para solicitar la revisión de las determinaciones del Fondo de 20 de marzo de 1987 y 21 de marzo de 1988.

Por otro lado, el obrero alega que desde el 21 de octubre de 1987 había solicitado a su patrono la reinstalación en su empleo, siendo finalmente despedido el 27 de junio de 1988, por considerarse que no estaba capacitado para continuar en el empleo.

Estando pendiente la apelación ante la Comisión Industrial, el obrero instó una querella contra su patrono, la cual ahora nos ocupa. En esta querella el obrero reclamó la reinstalación en su empleo, así como los salarios dejados de percibir. Luego de varios trámites procesales, el patrono consignó en el tribunal de instancia el importe correspondiente de la mesada y solicitó que se desestimara la acción en su contra, resolviendo el tribunal de instancia que no procedía el descuento de seguro social por la suma consignada en concepto de mesada, así como que por encontrarse la apelación pendiente ante la Comisión Industrial, no podía atender la controversia sobre si procedía o no la reinstalación del obrero.

Ante tal cuadro de hechos, y reconociendo que podría malinterpretarse que el Art. 5a de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, *supra*, aplica a este caso, creemos que es prudente identificar la ley aplicable a situaciones como la que nos ocupa hoy.

En primer lugar, somos de la posición de que si el accidente, o la enfermedad, sufrido por un obrero no es ocupacional, no le aplican las disposiciones del art. 5a de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, *supra*, pues tal ley dispone expresamente que sus disposiciones serán aplicables a todos los obreros

... que sufran lesiones o se inutilicen, o que pierdan la vida *por accidentes que provengan de cualquier acto o función inherente a su trabajo o empleo y que ocurran en el curso de éste* .... (Énfasis suplido.) Art. 2 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 2.

Por ende, de tratarse de un accidente o una enfermedad no ocupacional, no le aplican las disposiciones de tal ley; entre ellas, el referido artículo 5a. Recordemos la norma reiterada en *Silva v. Adm. Sistemas de Retiro*, 128 D.P.R. 256, 269 (1991), en cuanto a que:

Cuando el legislador se ha manifestado en lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa. *Atiles, Admor. v. Comisión Indus-*

*trial,* 77 D.P.R. 16, 20 (1954). *Si el lenguaje de un estatuto es tan inequívoco que postula un solo significado, un sentido cabal de humildad y autodisciplina requiere la aplicación de la voluntad legislativa.* (Cita omitida y énfasis suplido.) Véanse, además: *Cotto v. Depto. de Educación,* 138 D.P.R. 658 (1995); *Atlantic Pipe Corp. v. F.S.E.,* 132 D.P.R. 1026 (1993).

Al respecto, nos señalan R.E. Bernier y J.A. Cuevas Segarra, en su obra *Aprobación e interpretación de las leyes de Puerto Rico,* 2da ed. rev., San Juan, Pubs. J.T.S., 1987, Vol. II, Cap. 40, pág. 299, que:

> Bajo un sistema de separación de poderes como el que funciona en Puerto Rico, la Asamblea Legislativa tiene la facultad de aprobar las leyes. El Poder Judicial ejercitado por los tribunales consiste en el ejercicio de las facultades de resolver los litigios a través de la interpretación de la ley. En el desempeño normal de sus funciones, los tribunales están obligados a respetar la voluntad legislativa aunque los magistrados discrepen personalmente de la sabiduría de los actos legislativos. Interpretar una ley en forma que sea contraria a la intención del legislador implica la usurpación por la rama judicial de las prerrogativas de la rama legislativa. Por tanto, el intérprete debe abstenerse de sustituir el criterio legislativo por sus propios conceptos de lo justo, razonable y deseable.

No obstante, no por ello quedaría desprovisto de protección un obrero que sufra un accidente o una enfermedad no ocupacional, siendo entonces aplicables las disposiciones de la Ley de Beneficios por Incapacidad Temporal, entre cuyas disposiciones se provee para la reserva del empleo, pero por un período menor al provisto en la Ley del Sistema de Compensaciones por Accidentes del Trabajo. A dicho respecto, el inciso (q) de la Sec. 3 de la referida ley, según enmendada, 11 L.P.R.A. sec. 203, provee un término de seis (6) meses en que el patrono estará obligado a reservar el empleo que desempeñaba el obrero.[1] Por ende, la ley aplicable al caso de autos es la Ley de Beneficios por

---

[1] Dicho artículo fue enmendado recientemente mediante la Ley Núm. 262 de 26 de diciembre de 1995 (11 L.P.R.A. secs. 202–207), a los efectos de proveer que el término de reserva de empleo será de un (1) año. Dicha enmienda no aplica al caso de autos por ser posterior a los hechos que fundamentan esta causa de acción.

Incapacidad Temporal, por tratarse aquí de una enfermedad no ocupacional.

Por otro lado, tanto el término de doce (12) meses de reserva de empleo provisto por la Ley del Sistema de Compensaciones por Accidentes del Trabajo, como el análogo término de seis (6) meses provisto para ello en la Ley de Beneficios por Incapacidad Temporal, han sido interpretados por este Tribunal como que comienzan a decursar a partir del momento cuando el obrero se *inhabilite para trabajar.* Véanse, con relación a la Ley del Sistema de Compensaciones por Accidentes del Trabajo: *Vélez Rodríguez v. Pueblo Int'l, Inc.,* 135 D.P.R. 500 (1994); *Torres v. Star Kist Caribe, Inc.,* 134 D.P.R. 1024 (1994), así como *Rojas v. Méndez & Co., Inc.,* 115 D.P.R. 50 (1984), en relación con la Ley de Beneficios por Incapacidad Temporal.

En *Torres v. Star Kist Caribe, Inc.,* supra, al interpretar el Art. 5a de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, *supra,* resolvimos que dicho término de doce (12) meses es de caducidad, así como que el regreso temporal de un empleado a su puesto *no interrumpe el referido término.* Igual razonamiento debe aplicarse a su disposición análoga comprendida en el inciso (q) de la Sec. 3 de la Ley de Beneficios por Incapacidad Temporal, *supra.*

Además, en *Carrón Lamoutte v. Compañía de Turismo,* 130 D.P.R. 70 (1992), al interpretar el referido Art. 5a de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, resolvimos que una recidiva,[2] sin que ocurra un segundo accidente, no es un nuevo accidente, por lo que *la fecha original del suceso es la que se utiliza para computar el término* de doce (12) meses provisto en dicho artículo. Tal interpretación debe acogerse·también en cuanto al término análogo de seis (6) meses provisto en la Sec. 3 de la Ley de Beneficios por Incapacidad Temporal, *supra,* por lo

---

[2] Se define la *recidiva* como una reaparición o recaída, sin intervención de causa ajena alguna al accidente o enfermedad, luego de haber transcurrido un período de recuperación y dicha caída requiere tratamiento médico adicional. Véase *Carrón Lamoutte v. Compañía de Turismo,* 130 D.P.R. 70 (1992).

que al momento cuando el obrero solicitó la reinstalación en su empleo, ya había transcurrido el término de seis (6) meses de reserva de empleo.

Nótese que independientemente de cuál ley se aplique, al momento cuando el obrero solicitó su reinstalación, ya habían transcurrido ambos términos; esto es, el de doce (12) meses provisto en la Ley del Sistema de Compensaciones por Accidentes del Trabajo, *supra*, y el de seis (6) meses provisto en la Ley de Beneficios por Incapacidad Temporal. Ello dado a que el obrero alegadamente solicitó su reinstalación el 21 de octubre de 1987 y su inhabilitación para trabajar comenzó en septiembre de 1986. El hecho de haber regresado a trabajar en febrero de 1987, recayendo de nuevo durante el período de 1ro al 15 de mayo y los meses de junio y julio de 1987, no puede ser interpretado como que interrumpió el término de reserva de empleo.

Por ende, por los fundamentos antes expuestos, concurrimos con la opinión mayoritaria emitida en el caso de autos, pero deseamos dejar claro que a éste le aplica la Ley de Beneficios por Incapacidad Temporal, sobre la Ley del Sistema de Compensaciones por Accidentes del Trabajo.