Pabón Chameco, Jueza Ponente
*890 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos la peticionaria, Universidad Interamericana de Puerto Rico, en adelante, Universidad, solicitando la revisión de una resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante dicho dictamen, el foro de instancia denegó una "Solicitud de Sentencia Sumaria" presentada por dicha parte.
Por las razones que expresamos a continuación, se expide el auto y se confirma el dictamen recurrido.
I
Según surge del recurso, el 7 de abril de 2000, la recurrida, Teresa Morales Rolón, en adelante, señora Morales Rolón, presentó una querella al amparo de la Ley 80 de 30 de mayo de 1976, según enmendada, por alegado despido injustificado. En dicha querella planteó que había trabajado ininterrumpidamente en el Recinto de Barranquitas de la Universidad durante cinco (5) años, habiéndose desempeñado como Secretaria II en la Oficina de Recaudaciones de dicho centro educativo.
Luego de varios incidentes procesales, el 25 de octubre de 2000, la Universidad presentó "Solicitud de Sentencia Sumaria". El 21 de diciembre de 2000, se celebró la Conferencia con Antelación al Juicio. La Universidad alega que, a dicha fecha, la señora Morales Rolón no había replicado al escrito presentado. A tales efectos, el Tribunal de Primera Instancia dispuso que las partes debían completar el trámite de dicha solicitud concediéndole a la señora Morales Rolón hasta el 31 de enero de 2001 para presentar su réplica y a la Universidad hasta el 15 de febrero de 2001 para que duplicara.
Presentados los correspondientes escritos, el 22 de febrero de 2001, el Tribunal de Primera Instancia denegó la solicitud de sentencia sumaria, mediante un escueto no ha lugar.
Inconforme, el 20 de marzo de 2001, la Universidad recurrió a este Tribunal.
II
En su recurso, la Universidad plantea que incidió el Tribunal de Primera Instancia al denegar la solicitud de *891 sentencia sumaria y al no emitir una determinación, conforme a nuestro ordenamiento procesal vigente aplicable a la figura de la sentencia sumaria.
m
La controversia ante nuestra consideración se enmarca dentro del contexto de una solicitud de sentencia sumaria. La Regla 36.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 36.2, es la que le permite a una parte presentar una moción basada o no en declaraciones juradas, para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de una reclamación. P.A.C. v. E.L.A., 150 D.P.R._(2000), 2000 J.T.S. 33, a la pág. 681; Piñero v. A.A.A., 146 D.P.R._(1998), 98 J.T.S. 140, a la pág. 216; Soc. de Gananciales v. Vélez & Asoc., 145 D.P.R. _ (1998), 98 J.T.S. 55, a la pág. 924; Soto v. Caribe Hilton, 137 D.P.R. 294, 300 (1994).
La Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 36.3, también autoriza al tribunal a dictar sentencia sumaria cuando "no existe controversia real sustancial en cuanto a ningún hecho material y ... como cuestión de derecho, debe dictarse sentencia sumaria a favor de la parte promovente". Véase, además, P.A.C. v. E.L.A., supra, a la pág. 681; Soto v. Rivera, 144 D.P.R._(1997), 97 J.T.S. 145, a la pág. 368; Rodríguez v. Srio. de Hacienda, 135 D.P.R. 219, 222 (1994); Tello, Rivera v. Eastern Airlines, 119 D.P.R. 83, 86 (1987); Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 720 (1986).
El propósito principal de este mecanismo es propiciar la resolución justa, rápida y económica de litigios que no presentan controversias genuinas de hechos materiales, por lo que no se justifica la celebración de un juicio en su fondo. Utilizado correctamente, este vehículo procesal contribuye a descongestionar los calendarios judiciales. P.A.C. v. E.L.A., supra, a las págs. 681-83; López v. J. Gus Lallande, 144 D.P.R._(1998), 98 J.T. S. 9, a la pág. 523; Neca Mort. Corp. v. A & W Dev. S.E., 137 D.P.R. 860, 869 (1995); Pilot Life Ins. Co. v. Crespo Martínez, 136 D.P.R. 624, 632 (1994).
La sentencia sumaria procede en casos claros cuando el Tribunal tiene ante sí la verdad sobre todos los hechos pertinentes y no hace falta una vista evidenciaría. Medina v. M.S. & D. Química P.R., Inc., 135 D.P.R. 716, 726-727 (1994); J.A.D.M. v. Centro Com. Plaza Carolina, 132 D.P.R. 785, 802 (1993). De ordinario, si existen dudas sobre la procedencia de la sentencia sumaria, el Tribunal debe brindar a las partes la oportunidad de una vista evidenciaría. Véase, Rivera v. Depto. de Hacienda, 149 D.P.R._(1999), 99 J.T.S. 144, a la pág. 53; Bonilla Medina v. P.N.P., 140 D.P.R. 294 (1996); Rivera et al v. Superior Pkg., Inc. et al, 132 D.P.R. 115, 133 (1992).
La determinación de disponer de un pleito mediante este mecanismo, es una que está confiada a la discreción del foro de primera instancia. PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881, 914 (1994). La parte que solicita la sentencia sumaria tiene que demostrar que no hay controversia real sustancial en cuanto a ningún hecho material y que procede se dicte sentencia a su favor como cuestión de ley. La parte opositora se ve entonces en posición de poner en controversia los hechos presentados por el promovente. Soto v. Rivera, supra, a las págs. 398-369; Pilot Life Ins. Co. v. Crespo Martínez, supra, a la pág. 632.
Sin embargo, el sólo hecho de no presentar evidencia que controvierta la presentada por la parte promovente, no implica que proceda la moción. PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra.
Al dictar sentencia sumaria, el tribunal: (1) analizará los documentos que acompañan la moción solicitando sentencia sumaria y los documentos incluidos con la moción de oposición y aquéllos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. El tribunal no deberá dictar sentencia sumaria cuando: (1) existan hechos materiales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción, una controversia real sobre algún hecho material, o (4) como cuestión de derecho no procede. PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra, a las págs. 913-914.
*892 La moción de sentencia sumaria no debe ser utilizada en casos complejos o en casos cuya adjudicación requiera un análisis detenido y cuidadoso de los hechos. Rivera v. Depto. de Hacienda, supra; Ríos v. Cidra Mgf. Oper., 145 D.P.R._(1998), 98 J.T.S. 73. Su uso tampoco es favorecido en acciones de despido, donde está en controversia la verdadera intención de las partes. Piñero v. A.A.A., supra; Soto v. Caribe Hilton, supra.
El mecanismo procesal de sentencia sumaria no es aconsejable en casos donde hay elementos subjetivos, propósitos mentales o negligencia, ni cuando el factor credibilidad es esencial.
Por último, el Tribunal Supremo ha reconocido la importancia de permitir un descubrimiento de prueba adecuado antes de resolver una moción de sentencia sumaria por insuficiencia de la prueba. Acoger una moción de sentencia sumaria de forma prematura, puede tener el efecto de privar el promovido de sus derechos sin un debido proceso de ley. Pérez v. El Vocero de Puerto Rico, 149 D.P.R._(1999); 99 J.T.S. 160.
Nuestro ordenamiento jurídico contempla la situación en que el promovido por una moción de sentencia sumaria no ha tenido una adecuada oportunidad de conseguir prueba para apoyar alguno de los hechos esenciales que justifican su oposición. En virtud de lo anterior "confrontado el tribunal con una solicitud de sentencia sumaria prematura, éste puede, en el ejercicio de su discreción, posponer la evaluación de la moción o denegarla en esa etapa de los procedimientos, amén de que el propósito de las reglas de procedimiento es viabilizar el que los tribunales hagan justicia al resolver las controversias". Pérez v. El Vocero de P.R., supra, a las págs. 268-269. Hay que tener presente que el propósito de las reglas procesales es viabilizar que los tribunales hagan justicia al resolver las controversias. Pérez v. El Vocero de P.R., supra.
IY
La Ley 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185a, dispone una indemnización para todo empleado contratado sin tiempo determinado que hubiere sido despedido sin mediar justa causa. Alvira v. SK & FLaboratories Co., 142 D.P.R. 803 (1997); Delgado Zoyas v. Hosp. Int. Med. Avanzada, 137 D.P.R. 643 (1994).
El Art. 2 de la Ley 80, supra, sec. 185b, establece que se entenderá por justa causa para el despido de un empleado de un establecimiento, entre otros extremos: el "[cjierre total, temporero o parcial de las operaciones del establecimiento" o "[rjeducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido".
Sin embargo, en estos casos, el Art. 3 de la Ley dispone que:
"...el patrono estará obligado a retener con preferencia en el empleo a los empleados de más antigüedad, siempre que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional que puedan ser desempeñados por ellos, entendiéndose que se dará preferencia a los empleados despedidos en caso de que dentro de los seis (6) meses siguientes a su cesantía tuviere la necesidad de emplear a una persona en labores iguales o similares a las que desempeñaban dichos empleados al momento de su despido y dentro de su clasificación ocupacional siguiéndose también el orden de antigüedad en la reposición, excepto, y en ambas situaciones, en aquellos casos en que haya una diferencia clara o inconcursa en favor de la eficiencia o capacidad de trabajadores comparados en cuyo caso prevalecerá la capacidad...."
29 L.P.R.A. sec. 185c.
Sobre el particular, en la Guía Revisada Para la Interpretación y Aplicación de la Ley 80, supra, aprobada por el Departamento del Trabajo y Recursos Humanos el 30 de mayo de 1976, según enmendada, se establece lo siguiente:

*893
"Las causales de despido por razones económicas son las que están contenidas en los incisos (d), (e) y (f) del artículo 2 de la ley. El análisis de los tres incisos establece cuatro situaciones diferentes en las cuales puede darse el despido de empleados con justa causa, que son las siguientes:

- Despido por cierre total y permanente de operaciones.

- Despido por cierre total y temporero de operaciones.

- Despido por cierre parcial de operaciones o reducciones parciales en el empleo.

- Despido por cambios tecnológicos, de reorganización, estilo, diseño, naturaleza del producto o en los servicios rendidos al público."
Véase, además, A. Acevedo Colom, Legislación Protectora del Trabajo Comentada, 175 (5ta edición revisada).
A diferencia de los casos que envuelven despidos por cierre parcial o temporero, en los cuales la antigüedad es el criterio principal que determina el orden y la forma en que debe realizarse el despido de los empleados, las situaciones que envuelven cambios tecnológicos, de reorganización, estilo, diseño o naturaleza del producto y en los servicios rendidos al público, presentan la eficiencia o capacidad como el requisito principal. A. Acevedo Colom, Legislación Protectora del Trabajo Comentada, supra. En otras palabras, el requisito que rige el orden de retención de empleados al generarse estos cambios, es la eficiencia o capacidad del empleado. El requisito de antigüedad podría resultar impráctico en estos casos y, de observarse, podría afectar adversamente el negocio del patrono.
No obstante, a modo de ejemplo, la Oficina del Procurador del Trabajo ha manifestado que cuando se introduce maquinaria nueva y compleja, cuya operación requiera destrezas que el personal con que se cuenta no posee, entonces se puede despedir a los empleados sin necesidad de seguir regla alguna de retención, a no ser que algunos empleados posean tales destrezas, en cuyo caso debe dárseles preferencia en el empleo reteniéndolos por orden de antigüedad. Acevedo Colom, Legislación Protectora del Trabajo Comentada, supra. En adición, manifestó que si las destrezas requeridas para operar nueva maquinaria, para trabajar nuevos diseños o para adaptarse a nuevos procedimientos se pueden adquirir fácilmente mediante adiestramiento sencillo y poco costoso, el patrono está en la obligación de proveer tal adiestramiento y no puede despedir a los empleados que lo necesiten, so pena de ser responsable bajo la Ley Núm. 80, supra. Id.
Los cambios tecnológicos pueden llevar a que surgan nuevas clasificaciones ocupacionales y en otros una consolidación de éstas. Asimismo, en una empresa en la que se realizan cambios de tipo tecnológicos, en ocasiones resulta compulsorio alterar los requisitos y las funciones de los empleados que se desempeñan en una clasificación ocupacional determinada. Aquí resulta de aplicación la disposición de la Ley 80, supra, que establece que cuando haya una diferencia clara e inconcursa en favor de la eficiencia o capacidad de trabajadores comparados, prevalece la capacidad como requisito que determina el orden de retención. Acevedo Colom, Legislación Protectora del Trabajo Comentada, supra. Sin embargo, reiteramos que si se puede capacitar a dichos trabajadores mediante un curso de corta duración, un costo reducido y dificultades menores para los empleados y patronos, se entiende que se deben retener a los empleados de mayor antigüedad. Id.
En conclusión, al determinar los empleados que se encuentran capacitados para ejercer las funciones de un puesto, el patrono no disfruta de libertad absoluta para hacer la selección de forma arbitraria y caprichosa. Cada caso debe analizarse de forma individual y a tenor con los hechos particulares del mismo. Cuando hay empleados que resultan estar igualmente capacitados para desempeñarse en una plaza cuyas funciones y requisitos han sufrido cambios, la antigüedad rige el orden de retención. No observar el orden de antigüedad en esta última situación conlleva un despido injustificado. Acevedo Colom, Legislación Protectora del Trabajo Comentada, supra.
*894 Por último, la Ley 80, supra, establece la presunción de que el despido del empleado fue injustificado, correspondiéndole al patrono rebatir dicha presunción. Sobre el particular, el Art. 8 de dicha Ley 80, supra, sec. 185(k), dispone que "[e]n toda acción entablada por un empleado reclamando los beneficios dispuestos por las secciones 185(a) a 185(i) de este título, el patrono vendrá obligado a alegar, en su contestación a la demanda, los hechos que dieron origen al despido y probar que el mismo estuvo justificado para quedar eximido de cumplir con lo establecido en la sec. 185a de este título". Delgado Zayas v. Hosp. Int. Med. Avanzada, supra.
V
Examinado el ordenamiento jurídico aplicable, analicemos la controversia ante nuestra consideración.
En su escrito, la Universidad alega que la prueba que acompañó con la solicitud de sentencia sumaria, demostraba que el Recinto de Barranquitas de la Universidad le informó a sus empleados, para diciembre de 1996, de las dificultades que atravesaba dicho centro educativo, y las medidas que podían tomarse, las cuales incluían la eliminación de varios puestos. La información sobre la reorganización del Recinto se le ofreció a los empleados mediante reuniones a las que asistió la señora Morales Rolón, conforme se desprende de la hoja de asistencia. A tales efectos, la Universidad condujo un proceso de reorganización, conforme su normativa institucional, durante varios meses, basado en una propuesta presentada al Presidente de la institución. Una vez aprobada por dicho funcionario, se adoptó el plan de cesantía, reducción de jomada de trabajo, reorganización y reestructuración del Recinto en marzo de 1998. El 30 de marzo de 1998, la Rectora del Recinto de Barranquitas reunió al personal a fin de informarles la implantación del Plan de Reestructuración.
La Universidad plantea que el caso de autos es uno donde se ha documentado de forma rigurosa la necesidad del Recinto de la Universidad de efectuar los cambios en su estructura a fin de mejorar los servicios y optimizar el rendimiento de sus recursos. El despido de la señora Morales Rolón, alega, obedeció a que la plaza que ocupaba fue una de las que se eliminó de acuerdo a dicho Plan. La Universidad acompañó su solicitud con una Minuta de la reunión de la facultad y del personal administrativo celebrada el 6 de diciembre de 1996; la Hoja de Asistencia de dicha reunión; la propuesta de reestructuración, el plan de cesantía y reorganización y el mensaje de la Rectora.
Surge de los escritos que obran en el expediente, que la señora Morales Rolón acompañó su réplica con una declaración jurada donde alegó, por su parte, que la Universidad colocó a otra persona en el puesto que ésta ocupaba dentro de los seis (6) meses siguientes a fecha en que fue despedida. Asimismo, planteó que no fue retenida bajo el criterio de antigüedad al que tenía derecho, toda vez que las plazas similares de secretarias en la Universidad no fueron eliminadas, reteniéndose en dichas posiciones empleados contratados con posterioridad a la fecha del nombramiento de la recurrida. Entiende, por lo tanto, que no medió justa causa en su despido.
Esbozada la posición de ambas partes, procede determinar si actuó correctamente el foro de instancia al denegar la solicitud de sentencia sumaria. Por entender que fue correcta, confirmamos con la determinación de dicho tribunal. Veamos.
Una evaluación del planteamiento de la señora Morales Rolón arroja dudas suficientes que impiden resolver el caso de autos sin dar a dicha parte la oportunidad de ofrecer prueba. Entendemos que un análisis de los documentos que obran en el expediente revela, de manera meridiana, que existe una genuina controversia de hechos sobre la retención de la Universidad de empleados en una misma clasificación que la señora Morales Rolón con menos años de servicio que ésta, lo que nos llevaría a determinar si el despido fue uno justificado o no. Aclaramos que, aunque la Universidad, durante el proceso de reorganización, documentó el marco conceptual del mismo de manera completa, y acompañó su solicitud se sentencia sumaria cqn dichos documentos, guarda silencio en cuanto a las decisiones particulares y el análisis del empleado de manera individual. De hecho, un análisis de los argumentos de la Universidad da la impresión que la cesantía fue realizada en término del puesto sin evaluar la posible retención de la recurrida. Afirmamos esto, toda vez que se nos señala que "la plaza que ocupaba [la recurrida] fue una de las que se eliminó". No obstante, por el Qtro *895 lado, en el Plan de Cesantía se menciona, de manera general, que para la toma de decisiones se tomaron los > siguientes aspectos:

"Antigüedad.

Servicios directos al estudiantado.

"Expertise" en el área.

Conocimientos del área por otro personal.

Volumen del trabajo.

Mecanización de procesos.

Estudios profesionales en el área.

Tendencias sistémicas.

Transformaciones de Oficina.

Capacitación en el uso de la computadora y otros sistemas de información.

Directrices de la Junta de Síndicos y del Presidente sobre promoción y reclutamiento, vida religiosa y planificación y evaluación.

Complejidad del Recinto.

Otros como calidad en el servicio, mejoramiento continuo."
Los documentos que obran en el expediente guardan silencio sobre los parámetros utilizados en el caso de la señora Morales Rolón que revelen la implantación del Plan de Cesantía como tal. O sea, el análisis particular de porqué resultó cesanteada Morales Rolón, en vez de otros empleados en una clasificación igual que ella y con menos años de servicio. Nótese que alguno de los factores enumerados arriba pudieron ser subsanados al llevar a cabo una capacitación de la recurrida.
En resumen, de los documentos obrantes en el expediente no surge con claridad cuál fue el proceso realizado que llevó al despido de la recurrida. Entendemos que existe una genuina controversia de hechos que debe resolverse en una vista plenaria. "[E]l objetivo de aligerar la tramitación de un caso no puede derrotar el principio fundamental de todo proceso ante un tribunal: alcanzar una solución justa. Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272 (1990). Al dictar sentencia sumaria no se puede poner en peligro o lesionar los intereses de las partes. ” Philip Morris, Inc. v. Tribunal Superior, 103 D.P.R. 207, 216 (1975); PEZ Props., Inc. v. Gen. Acc. Ins. Co., supra, alapág. 125.
Por otro lado, la Universidad plantea como su argumento ante esta Curia que la única prueba que presentó la señora Morales Rolón fue una declaración jurada, y que ésta no tiene más prueba documental que no sea dicho escrito, el cual es una copia de sus alegaciones. Asimismo, plantea que las aseveraciones esbozadas en dicha declaración jurada no le constan de su propio y personal conocimiento. Sobre esto último, baste decir que es algo que atañe a la credibilidad de la recurrida, lo que justifica, prima facie, la improcedencia de la sentencia sumaria. Por otro lado, y con relación al planteamiento de que no cuenta con prueba suficiente, una lectura de dicha declaración jurada revela que aporta suficiente alegación en cuanto a los hechos en controversia. En el caso de autos, el proceso apenas está en ciernes, toda vez que no se ha comenzado el descubrimiento de prueba, por lo que es prematuro que la Universidad plantee que la señora Morales Rolón no cuenta con ninguna prueba que sustente su reclamación.
Un análisis de los escritos que obran en el expediente y del Derecho reseñado, así como nuestro profundo sentido de prudencia, nos mueven a que el asunto debe resolverse en el Tribunal de Primera Instancia, una vez tenga éste ante sí, la totalidad de los hechos.
Cabe destacar que nuestra revisión, en casos como el que nos ocupa, debe circunscribirse a si el juez o jueza de instancia abusó de su discreción al negarse a disponer sumariamente del pleito. Como hemos reseñado, luego de un ponderado análisis del caso de autos, nada hay ante nuestra consideración que apunte hacia un abuso de discreción por parte del Tribunal de Primera Instancia, al declarar sin lugar la solicitud de sentencia sumaria.
*896 Por último, con relación al segundo error planteado, réstanos señalar que la Regla 36.4 de las de Procedimiento Civil, 32 L.P.R.A. Ap. II, R. 36.4., dispone que cuando el Tribunal de Primera Instancia considere necesario celebrar juicio, así como al denegar una solicitud de sentencia sumaria, el tribunal determinará, al examinar la moción de sentencia sumaria, los hechos materiales sobre los cuales no hay controversia sustancial y los hechos materiales que están realmente controvertidos. Ello hace posible que las partes se percaten que existe controversia de hechos y hace factible, a su vez, que podamos ejercer efectivamente nuestra función revisora. No obstante, en el caso de autos, luego de un análisis de los documentos que obran en el expediente, estamos ante una situación donde la determinación del Tribunal de Primera Instancia está respaldada plenamente en el récord.
VI
Por los fundamentos expresados anteriormente, se expide el auto y se confirma el dictamen recurrido.
Así lo acordó el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General