

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Mercedes Idalis Izagas Santos<br><br>Peticionaria<br><br>v.<br><br>Family Drug Center And Convenience Store, Inc., h/n/c<br>Farmacia Sarimar Drug<br><br>Recurridos | Certiorari<br><br>2011 TSPR 101<br><br>182 DPR _____ |

Número del Caso:   CC           - 2010 - 144

Fecha: 30 de junio de 2011

Tribunal de Apelaciones:

Región Judicial de San Juan, Panel Especial

Juez Ponente:        Hon. Erik Ramírez Nazario

Abogado de la Parte Peticionaria:

Lcdo. Edwin Rivera Cintrón

Abogado de la Parte Recurrida:

Lcda. Eric Ronda del Toro

Materia: Despido Injustificado

Este documento constituye un documento oficial del Tribunal Supremo que está   sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Mercedes Idalis Izagas Santos
         Peticionaria

              v.

                              CC-2010-144

Family Drug Center And
Convenience Store, Inc., h/n/c
Farmacia Sarimar Drug
         Recurridos


Opinión del Tribunal emitida por la Jueza Asociada señora Fiol Matta


En San Juan, Puerto Rico, a 30 de junio de 2011.

En este caso, analizamos el proceso que debe seguirse cuando un empleado acogido a la reserva de empleo establecida por la Ley del Sistema de Beneficios por Incapacidad Temporal, mejor conocida como SINOT, solicita la reinstalación en su puesto. En particular, si un patrono puede exigirle que presente evidencia que acredite su capacidad para reintegrarse al empleo más allá de su recuperación de la enfermedad o accidente no-ocupacional que dio lugar a que se le declarara incapacitado para trabajar en primera instancia.

I.

La señora Mercedes Izagas Santos comenzó a trabajar en la Farmacia Sarimar Drug (Family Drug Center and Convencience Store) el 17 de agosto de 1992 en calidad de farmacéutica licenciada. En 1996, fue ascendida a la posición de farmacéutica regente.[1] En sus catorce (14) años como empleada de la farmacia, nunca fue disciplinada ni amonestada, y su desempeño ha sido catalogado como bueno. A finales del año 2005, la señora Izagas Santos anunció que se estaría sometiendo a una operación bariátrica por padecer de obesidad mórbida. Dicha operación, incluso, fue recomendada por los co-dueños de la farmacia, el señor José Francois Soto y la señora Edna Palou, ambos abogados de profesión y casados entre sí. Para poder someterse a esta operación, la señora Izagas Santos solicitó y obtuvo de su patrono una licencia sin sueldo. La operación se llevó a cabo el 31 de enero de 2006.[2] Acto seguido, solicitó y obtuvo los beneficios de la Ley 139 de 26 de junio de 1968, mejor conocida como la Ley de Beneficios por Incapacidad Temporal

---

[1] La farmacéutica regente es la farmacéutica principal de la farmacia. Es la encargada de los medicamentos controlados que se venden, lleva los registros, es la responsable ante los organismos del Estado de esos inventarios, ante el DEA y ante el Departamento de Salud, supervisa los empleados del recetario, hace las compras, atiende los asuntos de recetas y establece los turnos de los empleados, entre otras tareas. Transcripción de la Prueba Oral, pp. 29-30.

[2] El último día que trabajó la señora Izagas Santos antes de someterse a la operación fue el 27 de enero de 2006.

(SINOT).[3] Tanto la licencia sin sueldo como la solicitud bajo SINOT tenían como fundamento la incapacidad para trabajar que sufriría la señora Izagas Santos durante su periodo de recuperación producto de la cirugía.

A pesar de que originalmente se había estimado que la recuperación duraría pocos meses, la señora Izagas Santos sufrió complicaciones que alargaron el proceso. A consecuencia de estas complicaciones, la señora Izagas Santos fue atendida por varios especialistas, aunque la coordinación de su condición seguía en manos del cirujano que llevó a cabo la operación original, el Dr. Albert Suárez Domínguez.[4]

El 20 de noviembre de 2006, el doctor Suárez Domínguez le dio un alta total a la querellante expidiéndole un certificado médico autorizándola a regresar a su trabajo. No hizo determinación alguna de incapacidad, ni total ni parcial.[5] El 28 de noviembre, la señora Izagas Santos le entregó esta certificación médica al señor Soto. Éste no la aceptó y le pidió que se la entregara cuando tuviese las

---

[3] Las siglas se refieren al Seguro por Incapacidad No Ocupacional Temporal establecido por dicha ley.

[4] Como parte del tratamiento post-operacional y de las complicaciones posteriores, la señora Izagas Santos consumía distintos medicamentos y recibía una variedad de tratamientos. Producto de la lentitud de la recuperación, de que tenía que permanecer en descanso y de que aún no regresaba a su trabajo, la señora Izagas Santos sufrió de un periodo de depresión. Ahora bien, en ningún momento se estableció que dicha depresión la incapacitara para trabajar.

[5] Determinación de Hecho número 12 del Tribunal de Primera Instancia.

certificaciones médicas de los demás especialistas que la atendían que demostraran su capacidad para retornar. Además, le informó que interesaba reservarse el derecho de que un médico de su elección la evaluara. Posteriormente se cerró toda comunicación entre la demandante y los demandados. El 8 de enero de 2007, la señora Izagas Santos comenzó a trabajar para otra farmacia.

El 10 de enero de 2007 la señora Izagas Santos presentó una demanda por despido injustificado y en violación a SINOT. En ésta, alegó que una carta enviada por la co-propietaria de la farmacia el 26 de octubre de 2006, en donde se le indicaba que ya no era empleada de la farmacia, constituyó un despido y que dicho despido se hizo sin que mediara justa causa y en violación a la reserva de un año que dispone SINOT, periodo que terminaba en febrero de 2007. La demanda se presentó y tramitó al amparo del procedimiento sumario laboral dispuesto por la Ley 2 de 17 de octubre de 1961. En su alegación responsiva, el patrono levantó como defensa afirmativa que la querellante nunca fue despedida, y que, por el contrario, ésta no se reportó a trabajar tras haber sido dada de alta, como dispone SINOT. Además, alegó que la querellante incumplió con los requisitos para reclamar la protección de reinstalación que dispone dicha ley.

Tras la celebración del juicio y el desfile de la prueba, el Tribunal de Primera Instancia declaró con lugar

la demanda.[6] La sala de instancia determinó que la carta de 26 de octubre de 2006 suscrita por la co-propietaria de la farmacia, la señora Palou, fue, en efecto, una carta de despido.[7]

La parte demandada recurrió al Tribunal de Apelaciones. En síntesis, alegó (1) que no hubo despido, (2) que la querellante incumplió con los requisitos de reinstalación que dispone SINOT y (3) que se debió admitir como evidencia los récords de los medicamentos despachados a la señora Izagas hasta noviembre de 2006.[8] El Tribunal de Apelaciones revocó, con un disenso, la Sentencia del Tribunal de Primera Instancia.[9]

Sobre el primer señalamiento de error, es decir, que la carta del 26 de octubre constituyó un despido, el foro intermedio revocó la determinación de la sala de instancia. Según el Tribunal de Apelaciones, a la luz de la totalidad de las circunstancias, en particular el hecho de que la

---

[6] Como remedio, el Tribunal de Primera Instancia ordenó el pago de $33,480 por concepto de mesada y $8,370 de honorarios de abogado. No se dieron remedios bajo SINOT.

[7] Determinación de Hecho Núm. 11 de Tribunal de Primera Instancia.

[8] Sobre este tercer punto, el Tribunal de Primera Instancia rehusó admitir los récords porque eran impertinentes a la controversia, dado que la reserva de SINOT aun no había expirado a octubre de 2006 y que la querellante nunca fue declarada incapacitada por razones mentales o emocionales. Además, porque era prueba acumulativa ya que durante el juicio, a pesar de que en la alegación responsiva nunca se hizo tal defensa afirmativa de incapacidad, se pasó prueba sobre la depresión de la demandante y que tomaba medicamentos para dicho padecimiento.

[9] El juez Piñero González emitió un Voto Disidente.

peticionaria y el patrono continuaron en comunicación para canalizar el reintegro a sus labores, dicha carta no podría verse como un despido.

Sobre el segundo señalamiento de error, la mayoría del panel del Tribunal de Apelaciones determinó que la señora Izagas Santos "no había cumplido con proveer las certificaciones médicas que acreditaran su recuperación" y, por eso, "no cumplió con los requisitos establecidos mediante Ley SINOT para poder reintegrarse a sus funciones".[10] El foro apelativo concluyó que "esta sola certificación del cirujano dadas las circunstancias de autos, no cumple con el requisito de la Ley 139, *supra*, para establecer que el trabajador está mental y físicamente capacitado para ocupar el empleo".[11] Entendió, por el contrario, que la señora Izagas Santos "no había demostrado que había sido dada de alta de todas sus condiciones y que estaba capacitada para ocupar su plaza".[12] Es decir, dado

---

[10] *Id.*, pp. 15 y 20 (Énfasis suplido).

[11] *Id.*, p. 21; Anejo petición de *certiorari*, p. 287. El foro apelativo equiparó "seguir bajo tratamiento" a no recibir un "alta" médica. Además, concluyó que, a pesar de que la única declaración de incapacidad establecida fue como consecuencia de la operación bariátrica, al estar recibiendo la señora Izagas Santos tratamiento de otros médicos, éstos también tenían que certificar que se había recuperado para regresar a sus labores. Incluso, el Tribunal de Apelaciones concluyó que "[l]a prueba presentada demuestra que al momento en que se gestionaba el regreso de la señora Izagas a su empleo, ésta no había acreditado estar mental y físicamente capacitada para ocupar su puesto. Al no suplir el certificado del psiquiatra, incumplió con este requisito de ley". *Id.*, p. 23; Anejo petición de *certiorari*, p. 289 (Énfasis suplido).

[12] *Id.*, p. 23.

que la carta del 26 de octubre no era un despido y que pasado el periodo de reserva de un año provisto por SINOT la querellante, según la apreciación del tribunal intermedio, "no ejerció adecuadamente su derecho a ser reinstalada en su puesto",[13] la reserva de SINOT expiró.

Sobre el tercer señalamiento de error, el Tribunal de Apelaciones concluyó que los récords de los despachos de medicamentos a favor de la señora Izagas Santos en noviembre de 2006 relacionados con su padecimiento de depresión eran "relevantes para demostrar que a la fecha en que gestionaba la reinstalación en su empleo, no estaba capacitada para ello".[14] Además, determinó que esta prueba no admitida tenía una probabilidad de influencia sustancial en el resultado del pleito.

Inconforme con la determinación del Tribunal de Apelaciones, la señora Izagas Santos recurrió ante este Tribunal. Alega que el tribunal apelativo descartó injustificadamente la apreciación de la prueba y determinaciones de hechos del Tribunal de Primera Instancia, ya que dichas determinaciones tienen apoyo en la prueba presentada. En particular, la peticionaria argumenta que si se interpreta la carta del 26 de octubre a la luz de los testimonios vertidos en el juicio y la adjudicación de credibilidad que hizo el foro de instancia, se debe concluir que en ella se efectuó un despido. Alternativamente, plantea

---

[13] *Id.*

[14] *Id.*, p. 25; Anejo petición de *certiorari*, p. 291.

que, aunque se entienda que el texto de la carta admite dos posibles interpretaciones razonables distintas, como ésta debe interpretarse a la luz de los testimonios vertidos en el juicio, debe prevalecer la interpretación del foro primario.

En segundo lugar, la peticionaria aduce que, al no alegar el patrono en su contestación a la querella que ella no estaba capacitada para trabajar, como exige la Ley 2, renunció a esa defensa afirmativa, por lo cual dicha capacidad no está en controversia. En la alternativa, la peticionaria alega que si se entendiera que su capacidad para regresar a trabajar es un asunto en controversia, a pesar de que cuando fue despedida aún no había expirado la reserva dispuesta por SINOT, la indagación se tendría que circunscribir a la incapacidad sobrevenida como consecuencia de la operación bariátrica y no extenderse a otros padecimientos que nunca provocaron que se le declarara incapacitada para trabajar. Por último, la peticionaria cuestionó la determinación del Tribunal de Apelaciones a los efectos de que no se debían excluir los documentos relativos con el historial de medicamentos relacionados con su condición de depresión. El 6 de agosto de 2010 expedimos el auto de *certiorari*.[15]

---

[15] Hemos expresado de forma reiterada que un tribunal apelativo no debe intervenir con las determinaciones de hechos de los tribunales de instancia en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto. S.L.G. Rivera

Carrasquillo v. A.A.A., 177 D.P.R. 345, 356 (2009). Esta norma aplica particularmente a las determinaciones de hechos que hacen los tribunales de primera instancia basadas en testimonio oral. Lo anterior se debe a la oportunidad que tiene el juzgador de observar el comportamiento del testigo mientras ofrece su testimonio, lo cual constituye un factor fundamental para la adjudicación de credibilidad. Ramírez Ferrer v. Conagra Foods Puerto Rico, Inc., 175 D.P.R. 799, 810 (2009).

Sin embargo, esta doctrina de deferencia judicial no es absoluta, sino que cede ante las posibles injusticias que puedan acarrear determinaciones de hechos que no estén sustentadas en la prueba desfilada ante el foro primario. S.L.G. Rivera Carrasquillo v. A.A.A., supra. Es decir, los tribunales apelativos, por vía de excepción, pueden descartar dichas determinaciones cuando las mismas no sean razonablemente representativas de la prueba que desfiló ante el foro primario. Méndez de Rodríguez v. Morales Molina, 142 D.P.R. 26, 36 (1996). Asimismo, esta norma de deferencia judicial no es aplicable a la evaluación de prueba documental o pericial debido a que, en estos casos, los tribunales apelativos están en las mismas condiciones que el tribunal de instancia para llevar a cabo una evaluación adecuada de la prueba y llegar a sus propias conclusiones. Ríos v. Mark, 119 D.P.R. 816 (1987).

En el caso de epígrafe, el Tribunal de Primera Instancia resolvió que la carta del 26 de octubre de 2006 constituyó un despido. Surge de la sentencia, que esa determinación estuvo basada en el texto de la carta y no en los testimonios orales vertidos por los testigos ante el foro primario. Así queda evidenciado al disponer que: "Con fecha del 26 de octubre de 2006 […] suscribe una carta a la querellante en la que se hace una serie de imputaciones sobre su visita a la farmacia […] y la despide de su trabajo". Apéndice petición de certiorari, p. 205. Las demás conclusiones del foro de instancia respecto a los testimonios mencionados son independientes a su determinación sobre si la carta constituyó un despido, adjudicación con base en el documento.

Por su parte, el Tribunal de Apelaciones, al resolver que la carta del 26 de octubre no constituía un despido, se basó en el texto de la carta en unión a hechos incontrovertidos, entre éstos, que el señor François Soto, co-propietario de la farmacia, continuó reuniéndose con la querellante para planificar la reintegración de esta última a su empleo. Al tratarse de prueba documental y hechos que no están en controversia, el foro intermedio se encontraba en igual posición que el tribunal de primera instancia para evaluarlos y llegar a sus propias conclusiones. En ese tenor, acogemos la determinación del Tribunal de Apelaciones en cuanto a que la carta del 26 de octubre de 2006 no constituyó un despido a la luz de la continuación de las comunicaciones entre las partes para gestionar la

II.

El Tribunal de Apelaciones concluyó que la solicitud de reinstalación que hizo la peticionaria a su patrono debía incluir certificaciones médicas de todos los especialistas que la atendieron y no únicamente del médico que la atendió en relación con la condición por la que se le incapacitó bajo SINOT.

La sección 16 del Artículo II de nuestra Constitución reconoce, entre otros, el derecho de todo trabajador a "protección contra riesgos para su salud o integridad personal en su trabajo o empleo".[16] Como parte del cauce estatutario de ese mandato constitucional, la Asamblea Legislativa ha aprobado varias leyes especiales dirigidas específicamente a proteger a los trabajadores que por accidente o enfermedad, ya sea ocupacional o no-ocupacional, se inhabilitan temporeramente para trabajar.[17] La Ley 45 de 18 de abril de 1935, según enmendada, mejor conocida como la Ley del Sistema de Compensaciones por Accidentes del Trabajo atiende situaciones de enfermedad o accidentes ocupacionales

---

reinstalación de la señora Izagas Santos. En vista de ello, limitaremos nuestra discusión al segundo y tercer señalamiento de error.

[16] Const. PR, Art II., § 16.

[17] García v. Darex P.R., Inc., 148 D.P.R. 364, 374 (1999); Cuevas v. Ethicon Div. J & J Prof. Co., 148 D.P.R. 839, 845 (1999); Torres v. Star Kist Caribe, Inc., 134 D.P.R. 1026, 1029 (1994); Ruy N. Delgado Zayas, Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño, San Juan, Puerto Rico (Revisión 2005), p. 187.

que inhabilitan a un trabajador a continuar realizando sus labores.[18] Para situaciones de enfermedades o accidentes no ocupacionales, se aprobó la Ley 139 de 26 de junio de 1968, según enmendada, Ley de Beneficios por Incapacidad Temporal.[19] Como adelantáramos, si bien estas leyes cubren supuestos distintos según la naturaleza del accidente o enfermedad, tienen un mismo propósito y hay una notable uniformidad entre ellas, no sólo en su lenguaje y estructura estatutaria sino en su desarrollo interpretativo.[20] Como consecuencia, tanto la Asamblea Legislativa como este Tribunal hemos recurrido a una para analizar e interpretar la otra.[21]

En cuanto a la reserva de empleo y la obligación de reinstalación, SINOT dispone así:

> En los casos de incapacidad para el trabajo de acuerdo con las disposiciones de este capítulo, <u>el patrono vendrá obligado a reservar el empleo</u> que desempeña el trabajador al momento de comenzar la incapacidad y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:

---

[18] <u>11 L.P.R.A. §§ 1 *et seq.*</u>

[19] <u>11 L.P.R.A. §§ 201 *et seq.*</u>

[20] Véase Delgado Zayas, *Op.Cit.*, p. 193. Por un tiempo, la única diferencia entre los estatutos era la duración del periodo de reserva cuando la Ley 45 proveía para 12 meses mientras que SINOT únicamente otorgaba 6 meses. No obstante, precisamente como parte del proceso de uniformización entre ambas leyes, ahora SINOT también provee para una reserva de empleo de 12 meses.

[21] Para efectos de la figura de la reserva de empleo y del significado de incapacidad que ofrece SINOT, por su semejanza virtualmente idéntica con la Ley 45 y nuestro historial de interpretación uniforme, haremos referencia tanto a casos directamente relacionados con SINOT como la jurisprudencia interpretativa de la Ley 45.

> (1) Que el trabajador requiera al patrono que lo reponga en su empleo dentro del término de quince (15) días, contados a partir de la fecha en que fue dado de alta, y siempre y cuando que dicho requerimiento no se haga después de transcurridos un (1) año desde la fecha de comienzo de la incapacidad;
>
> (2) que el trabajador esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicita del patrono dicha reposición, y
>
> (3) que dicho empleo subsista.[22]

Como puede observarse, la ley brinda dos tipos de protección al obrero. Primero, le impone al patrono el deber de reservarle al trabajador, por doce (12) meses, el empleo en el que se desempeñaba al momento de ocurrir el accidente. Segundo, el trabajador tiene derecho a que lo repongan en ese mismo empleo una vez es dado de alta, si se lo solicita al patrono y si cumple con los requisitos establecidos. El remedio de reinstalación constituye una excepción por consideraciones de política pública al remedio exclusivo de la mesada provisto por la Ley 80 en casos de despidos injustificados.[23] Las obligaciones que tiene el patrono bajo SINOT son independientes la una de la otra.[24] En caso de que

---

[22] 11 L.P.R.A. § 203(q) (Énfasis suplido).

[23] *Véase* Rivera v. Ins. Wire Prods. Corp., 158 D.P.R. 110, 117 (2002); Soc. de Gananciales v. Royal Bank de P.R., 145 D.P.R. 178, 192 (1998); Vélez Rodríguez v. Pueblo Int'l, Inc., 135 D.P.R. 500, 512-513, 515.

[24] García v. Darex P.R., Inc., *supra*, p. 376. Este caso es en referencia a la Ley 45. A similar conclusión hemos llegado en cuanto a SINOT. Véase Meléndez v. Asoc. Hosp. del Maestro, 156 D.P.R. 828 (2002).

viole el periodo de reserva o no reinstale al empleado que cumple con los requisitos establecidos en la ley tras haber sido requerido por éste, el patrono le responderá en daños y perjuicios.

De la única manera en que un patrono puede despedir a un empleado durante el periodo de reserva es si media justa causa.[25] Por otra parte, si el patrono lo despide sin justa causa antes de que venza el periodo de reserva, el empleado no tendrá que solicitar su reinstalación al finalizar el periodo de reserva para poder instar su acción de daños contra el patrono por haber violado la reserva.[26] Hemos resuelto que esta reserva existe "con total independencia de si en el futuro el obrero cualifica para ser reinstalado, e impide que el obrero sea despedido".[27] Por eso, mientras la reserva esté vigente, no se puede despedir al empleado aunque el empleado no cumpla con los requisitos establecidos en la ley para pedir la reinstalación.[28] En otras palabras, no será justificación para despedir a un empleado durante el periodo de reserva el que éste no haya cumplido o que se prevea que no podrá cumplir con los requisitos de la reinstalación. De ser éste el caso, el patrono tendrá que

---

[25] Meléndez v. Asoc. Hosp. del Maestro, *supra*, p. 857.

[26] Rivera v. Ins. Wire Prods., Corp., *supra*, p. 127; Meléndez v. Asoc. Hosp. del Maestro, *supra*, n. 13.

[27] García v. Darex P.R., Inc., *supra*, p. 378.

[28] Rivera v. Ins. Wire Prods., Corp., *supra*, p. 124.

esperar a que se extinga el período de reserva, salvo que exista justa causa bajo la Ley 80 para el despido.

El objetivo de la reserva de empleo bajo SINOT es "garantizar al obrero que se incapacita temporalmente debido a una enfermedad o accidente no ocupacional, no sólo tranquilidad de espíritu y el sustento de él y de su familia por un tiempo determinado, sino el derecho a ser reinstalado".[29] Aunque el trabajador esté inhabilitado para realizar sus funciones, la relación obrero-patronal sigue intacta mientras dure el periodo de reserva.[30] Esta reserva de doce (12) meses comienza a transcurrir a partir del momento en que el obrero se inhabilite para trabajar[31] y se

---

[29] Rojas v. Méndez & Co., Inc., 115 D.P.R. 50 (1984). Véase además Delgado Zayas, Op.Cit., p. 193: "[F]ue la intención del legislador que la protección que recibiera el trabajador mediante legislación, no fuera meramente económica. Lo que pretendió proteger fue esencialmente la tenencia del empleo".

[30] Rivera v. Ins. Wire Prods., Corp., supra, p. 126, citando a Santos et al. v Lederle, 153 D.P.R. 812 (2001) y Santiago v. Kodak Caribbean, Ltd., 129 D.P.R. 763 (1992). Estos casos se refieren a la reserva de empleo provista por la Ley 45 de 18 de abril de 1935, según enmendada, conocida como la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. §§ 1 et seq. Esta Ley atiende accidentes y enfermedades ocupacionales, mientras que SINOT atiende casos no ocupacionales. No obstante, consistentemente hemos interpretado dichos estatutos de manera integral y uniforme. Incluso, sobre el asunto específico de la vigencia de la relación obrero-patronal mientras esté activa una reserva de empleo, en Rivera v. Ins. Wire Prods., Corp. por voz del Juez Asociado Corrada del Río, enfatizamos la relación íntima entre ambos regímenes estatutarios. Id., p. 126 y nota núm. 7.

[31] Alvira v. SK & F Laboratories Co., 142 D.P.R. 803 (1997, Opinión Concurrente del Juez Asociado Corrada del Río, p. 819).

trata de un plazo de caducidad.[32] Además, como estatuto reparador, estamos obligados a interpretarlo liberalmente a favor del trabajador.[33]

Para disfrutar de los beneficios de la reserva de empleo y derecho a reinstalación que provee SINOT, hace falta que el trabajador quede incapacitado por una enfermedad o accidente no ocupacional. En cuanto a qué significa 'incapacidad' para efectos de esta Ley, el propio estatuto nos ofrece una definición:

> Con respecto a un trabajador quien está empleado significa su <u>inhabilidad</u> por lesión, enfermedad o embarazo <u>para desempeñar su trabajo habitual o cualquier otro trabajo</u>.
>
> […]
>
> Período de incapacidad será el período durante el cual [el empleado] está <u>continuamente inhabilitado</u>.[34]

Podemos colegir de lo anterior que el elemento central de la definición de incapacidad es la inhabilidad del empleado, no meramente de llevar a cabo las funciones de su puesto en particular, sino de "cualquier otro trabajo". Incluso, hemos resuelto que "esta incapacidad debe ser de <u>tal naturaleza</u> que [le] inhabilite para trabajar <u>totalmente</u>, no tan sólo para realizar sus labores usuales".[35] No todo padecimiento conlleva que el empleado esté incapacitado como

---

[32] *Id.*

[33] <u>Rojas v. Méndez & Co., Inc.</u>, *supra*, p. 53.

[34] <u>11 L.P.R.A. § 202(g)</u>. (Énfasis suplido).

[35] <u>Torres González v. Depto. del Trabajo</u>, 127 D.P.R. 931, 937 (1991) (Énfasis suplido).

para recibir los beneficios de SINOT. Por eso, la certificación de recuperación y recapacitación se referirá solamente a la incapacidad que originalmente permitió al empleado disfrutar de los beneficios de SINOT. Nada hay en la ley que le requiera al empleado presentar una certificación relacionada con padecimientos que nunca le inhabilitaron para trabajar en primer lugar. Mucho menos faculta al patrono para exigir pruebas o certificaciones adicionales.[36]

Evidentemente, un obrero acogido a SINOT no deja de ser empleado de su patrono. Por el contrario, tanto la reserva como el derecho de reinstalación parten de la premisa de la continuación de la relación obrero-patronal. Hemos sido enfáticos en que "la reserva de empleo supone la continuación y existencia de la relación obrero-patronal, al menos durante [el periodo de la reserva]".[37] En el caso de autos, el patrono se negó a reinstalar a la señora Izagas Santos a su puesto, a pesar de que ésta presentó posteriormente, dentro del periodo de reserva, una certificación médica del doctor que condujo la operación que la había inhabilitado para trabajar, y a pesar de que la peticionaria nunca fue declarada como incapacitada para

---

[36] Esto no priva al patrono de poder despedir al empleado, después de reinstalarlo, si tiene justa causa para ello, por ejemplo, que no rinda su trabajo eficientemente como dispone el artículo 2 de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. § 185b(b).

[37] Rivera v. Ins. Wire Prods., Corp., *supra*, p. 126.

trabajar por los demás padecimientos que tenía. Al así actuar, violó la ley.


                              III.

Las reclamaciones hechas al amparo de la Ley 80 pueden tramitarse a través de la Ley 2 de 17 de octubre de 1961, según enmendada,[38] que establece un procedimiento sumario para la rápida consideración y adjudicación de las querellas de obreros y empleados contra sus patronos relacionadas a salarios, beneficios y otros derechos laborales.[39] Desprovista de esta alternativa, una reclamación bajo la Ley 80 sería un procedimiento ordinario más, lo cual, según hemos dicho anteriormente, es "incompatible con alcanzar, en su máxima expresión, el mandato legislativo de diligencia en el dictamen judicial".[40] El deber de este Tribunal de velar por que los procedimientos judiciales se lleven a cabo con la mayor rapidez posible, cobra singular importancia al enfrentarnos a una situación en la que los otros poderes constitucionales –legislativo y ejecutivo– en el ejercicio válido de aprobar leyes, han expresado su sentir sobre los asuntos que a su juicio merecen especial atención.[41] Las

---

[38] 32 L.P.R.A. §§ 3118 *et seq.*

[39] *Véase* Vizcarrondo Morales v. WVM, Inc., 2008 T.S.P.R. 164, a la pág. 5, 175 D.P.R. ___ (2008); Dávila Rivera v. Antilles Shipping, Inc., 147 D.P.R. 483, 492 (1999).

[40] Dávila Rivera v. Antilles Shipping, Inc., *supra*, p. 492.

[41] Srio. del Trabajo v. J.C. Penney Co., Inc., 119 D.P.R. 660, 665 (1987).

reclamaciones presentadas según lo dispuesto por la Ley 2 "por su naturaleza y finalidad, ameritan ser resueltas a la brevedad posible para así lograr los propósitos legislativos de proteger el empleo, desalentar los despidos injustificados y proveerle al obrero despedido medios económicos para su subsistencia mientras consigue un nuevo empleo".[42] Por consiguiente, este estatuto también debe interpretarse liberalmente a favor del empleado.[43] Acorde a ello, corresponde a los tribunales darle cumplimiento estricto a los procedimientos establecidos por la Ley 2,[44] sin que se entienda, no obstante, que haya sido la intención del legislador imponer un trámite procesal inflexible e injusto para el patrono querellado.[45]

Cuando se presenta una causa de acción al palio de la Ley 2, el patrono querellado deberá hacer una sola alegación responsiva en la cual deberá incluir todas sus defensas y objeciones, entendiéndose que renuncia a todas las defensas y objeciones que no incluya en dicha alegación responsiva.[46]

---

[42] Vizcarrondo Morales v. MVM, Inc., *supra*, pp. 5-6.

[43] *Id.*, p. 6.

[44] Dávila Rivera v. Antilles Shipping, Inc., *supra*, p. 492; Mercado Cintrón v. Zeta com., Inc., 135 D.P.R. 737, 742 (1994).

[45] Aguayo Pomales v. R&G Mortgage, 169 D.P.R. 36, 44 (2006).

[46] 32 L.P.R.A. § 3120. Esto es cónsono con lo dispuesto por la Ley 80 en su sección 185k(a): "En toda acción entablada por un empleado reclamando los beneficios dispuestos por las secs. 185a a 185m de este título, el patrono vendrá obligado a alegar, en su contestación a la demanda, los hechos que dieron origen al despido y probar que el mismo estuvo justificado."

La Ley 2 también dispone que las Reglas de Procedimiento Civil se aplicarán "en todo aquello que no esté en conflicto con las disposiciones específicas de las mismas o con el carácter sumario".[47] Es decir, se recurrirá a las Reglas de Procedimiento Civil cuando éstas no contradigan lo dispuesto por la Ley 2 o choquen con su naturaleza sumaria.[48] En cuanto a la posibilidad de enmendar las alegaciones responsivas para incluir defensas afirmativas no mencionadas originalmente, hemos resuelto, enfáticamente, que "los tribunales de instancia <u>no</u> deben permitir que una parte querellada enmiende su contestación a la querella para adicionar nuevas defensas afirmativas".[49] En cumplimiento con las disposiciones antes explicadas, no recurriremos a las Reglas de Procedimiento Civil cuando el asunto bajo consideración está expresa y precisamente atendido por la Ley 2. Solamente podemos ser más flexibles cuando medien circunstancias verdaderamente excepcionales.[50]

En el caso de autos, la parte querellada se limitó en su alegación responsiva a negar el despido. No ofreció ninguna de las justificaciones enumeradas en la Ley 80. Tampoco alegó que la querellante sufría de alguna

---

[47] <u>32 L.P.R.A. § 3120</u>.

[48] <u>Aguayo Pomales v. R&G Mortgage</u>, *supra*, p. 51.

[49] <u>Srio. del Trabajo v. J.C. Penny Co,. Inc.</u>, *supra*, p. 669. Véase además <u>Vizcarrondo Morales v. MVM, Inc.</u>, *supra*, p. 16; <u>Rodríguez *et al.* v. Rivera *et al.*,</u> 155 D.P.R. 838, 857 (2001).

[50] <u>Mercado Cintrón v. Zeta Com., Inc.</u>, *supra*, p. 742.

incapacidad adicional a aquélla que era producto de la operación bariátrica. En consecuencia, renunció a toda defensa afirmativa adicional.

IV.

Ante el Tribunal de Apelaciones, la parte querellada señaló que el foro de instancia incidió al no admitir evidencia sobre el despacho de medicamentos anti-depresivos a la querellante en noviembre de 2006. El foro apelativo le dio la razón y la peticionaria aduce que se equivocó. Debemos, por tanto, examinar nuestra normativa evidenciaria para llegar a una conclusión.

Evidencia pertinente es aquélla que tiende a aumentar o disminuir la probabilidad de la existencia de un hecho que tiene consecuencias para la adjudicación de la acción. Esto incluye la evidencia que sirva para impugnar o sostener la credibilidad de una persona testigo o declarante.[51] La evidencia pertinente es admisible excepto cuando se disponga lo contrario por imperativo constitucional, por disposición de ley o por las Reglas de Evidencia.[52] La materialidad y el valor probatorio, como nos explica el profesor Chiesa Aponte, son elementos fundamentales en la determinación de pertinencia y admisibilidad,[53] y "se refiere a la relación

---

[51] Regla 401 de Evidencia, 32 L.P.R.A. Ap. VI R. 401.

[52] Regla 402 de Evidencia, 32 L.P.R.A. Ap.VI R. 402.

[53] Ernesto Chiesa Aponte, Tratado de Derecho Probatorio, Tomo I, Rep. Dominicana, p. 22.

[entre la prueba ofrecida] con los hechos y cuestiones de derecho en controversia".[54] Por tanto, la pertinencia está vinculada, condicionada y sujeta al "derecho sustantivo aplicable al caso".[55] Evidencia que no cumpla con cualquiera de estos dos elementos no es pertinente y no será admisible en los tribunales.[56]

Ahora bien, la pertinencia es condición necesaria pero no suficiente para la admisión de cualquier medio de prueba.[57] Por ello, la Regla 403 de Evidencia permite la exclusión de prueba pertinente "cuando su valor probatorio queda sustancialmente superado por cualesquiera de los siguientes factores: (a) riesgo de causar perjuicio indebido, (b) riesgo de causar confusión, (c) riesgo de causar desorientación del Jurado, (d) dilación indebida de los procedimientos y (e) innecesaria presentación de prueba acumulativa".[58] La exclusión de prueba pertinente según lo dispuesto por esta Regla descansa en la sana discreción del tribunal.[59] La causa de exclusión por conllevar la innecesaria presentación de prueba acumulativa tiene como objetivo la economía procesal.[60]

---

[54] *Id.*

[55] Ernesto Chiesa Aponte, Reglas de Evidencia de Puerto Rico de 2009, J.T.S., p. 114.

[56] *Véase* Pueblo v. Ortiz Pérez, 123 D.P.R. 216, 228 (1989).

[57] Chiesa Aponte, Tratado, *Op.Cit.*, p. 1.

[58] 32 L.P.R.A. Ap. VI R. 403 (Énfasis suplido).

[59] Chiesa Aponte, Reglas, *Op.Cit.*, p. 116.
[60] *Id.*, p. 119.

Evidentemente, los tribunales se pueden equivocar al admitir prueba que no era admisible o excluir prueba que sí lo era. En el segundo caso, la Regla 104(B) de Evidencia dispone que le corresponde a la parte perjudicada "invocar el fundamento específico para la admisibilidad de la evidencia ofrecida y hacer una oferta de prueba".[61] Las Reglas de Evidencia también atienden las consecuencias en caso de que se cometa un error en la admisión o exclusión de evidencia. La Regla 105 de Evidencia dispone, en lo pertinente, como sigue:

> (A) Regla General
>
> No se dejará sin efecto una determinación de admisión o exclusión errónea de evidencia ni se revocará por ello sentencia o decisión alguna a menos que:
>
>> (1) la parte perjudicada con la admisión o exclusión de evidencia hubiera satisfecho los requisitos de objeción, fundamento u oferta de prueba establecidos en la Regla 104, y
>>
>> (2) el Tribunal que considera el señalamiento estime que la evidencia admitida o excluida <u>fue un factor decisivo o sustancial</u> en la sentencia emitida o decisión cuya revocación se solicita.[62]

Para determinar si la evidencia admitida o excluida fue un factor decisivo o sustancial en la sentencia emitida, hay que llevar a cabo "un cálculo algo especulativo, en términos de cuál es la <u>probabilidad</u> de que <u>de no haberse cometido el</u>

---

[61] <u>32 L.P.R.A. Ap. VI R. 104</u>.

[62] <u>32 L.P.R.A. Ap. VI R. 105</u> (Énfasis suplido).

_error_, el resultado hubiera sido distinto.[63] De no ser así, se entenderá que fue un error benigno ("harmless error") y no conlleva la revocación de la determinación.

Hemos visto que la Ley SINOT provee para una reserva de empleo solamente por 12 meses independientemente de que el empleado se haya recuperado física y emocionalmente. Lo que es más, como cuestión de derecho sustantivo, para efectos del proceso de reinstalación bajo SINOT, tan solo será pertinente evidencia relacionada a la condición por la que se declaró al empleado incapacitado para trabajar en primera instancia. Siendo ello así, cualquier prueba que se refiera a su estado físico o emocional que no esté relacionada con la enfermedad por la cual se le incapacitó es impertinente. Además, como también hemos visto, el patrono renunció a toda defensa afirmativa que no incluyó en su contestación a la demanda, tal y como disponen tanto la Ley 80 como la Ley 2, por tanto renunció a su derecho a pasar prueba sobre el asunto. De igual forma, durante el juicio se desfiló prueba sobre el hecho de que la querellante, en efecto, había tomado medicamentos anti-depresivos durante su recuperación.[64] Es decir, ya el foro primario había recibido prueba sobre el estado emocional de la querellante y los medicamentos que por ello ingería. El tribunal de instancia resolvió, en su sana discreción, que la evidencia sobre el

---

[63] Chiesa Aponte, _Reglas_, _Op.Cit._, p. 88 (Énfasis suplido).

[64] Esto, a pesar de que ella nunca se estableció que dicha condición la inhabilitara para trabajar como exige SINOT.

despacho de medicamentos era <u>acumulativa</u> y era innecesario pasar prueba sobre los despachos de medicamentos para noviembre de 2006. No erró.[65]

V.

Por los fundamentos anteriormente expuestos, resolvemos que el patrono incumplió con su obligación bajo SINOT de reinstalar a la señora Izagas Santos una vez ésta le entregó la certificación médica que acreditaba su recuperación emitida por el doctor que atendió su enfermedad no-ocupacional. Por tanto, confirmamos la sentencia del Tribunal de Apelaciones en cuanto a que la carta del 26 de octubre no constituyó un despido y revocamos respecto a la desestimación por la reclamación bajo SINOT. Se devuelve el caso al Tribunal de Primera Instancia para que otorgue el remedio procedente bajo SINOT según establecido en esta Opinión.[66]

Se dictará sentencia de conformidad.

Liana Fiol Matta
Jueza Asociada

---

[65] Incluso en el supuesto de que se entienda que la prueba era pertinente y que no era acumulativa, no estamos ni remotamente ante un error sustancial que de no haberse cometido hubiese cambiado el resultado.

[66] En este caso, la señora Izagas Santos reclamó los salarios dejados de percibir y una compensación por los daños y perjuicios sufridos. No solicitó la reinstalación en el empleo. Por tanto, lo que corresponde es calcular los salarios que la empleada hubiera devengado entre el momento en que debió haber sido reinstalada y cuando inició su nuevo empleo y, de haberse probado, una compensación por los daños sufridos.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Mercedes    Idalis    Izagas
Santos
      Peticionaria

    v.

Family  Drug  Center  And
Convenience  Store,  Inc.,
h/n/c Farmacia Sarimar Drug
      Recurridos

*Certiorari*

CC-2010-144

*SENTENCIA*

En San Juan, Puerto Rico a 30 de junio de 2011.

    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, confirmamos la sentencia del Tribunal de Apelaciones en cuanto a que la carta del 26 de octubre no constituyó un despido y revocamos respecto a la desestimación por la reclamación bajo SINOT. Se devuelve el caso al Tribunal de Primera Instancia para que otorgue el remedio procedente bajo SINOT según establecido en esta Opinión.

    Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

                    Aida Ileana Oquendo Graulau
                 Secretaria del Tribunal Supremo